JOSEPH WOOD, RESPONDENT, *v.* THE CITY OF SAN
   FRANCISCO, THE COMMISSIONERS OF THE
   FUNDED DEBT OF THE CITY OF SAN FRAN-
   CISCO AND THE TRUSTEES OF THE BROADWAY
   WHARF COMPANY.

[1] EASEMENT—RIGHT OF WAY CANNOT BE DEFEATED.—An atttempt by the City of
    San Francisco to convert a public easement to private use, or to defeat the
    right of way over a public street, is beyond the power of a Corporation, and the
    Legislature has no authority to interfere with the disposition of the land and
    premises upon which the easement is situated. after title has passed from the
    State.
SAN FRANCISCO STREETS ON CITY FRONT.—Where a city is laid out with streets
    running to the water, such streets should be held to continue on to the high
    water, if the city front is filled in, or the space enlarged by accretion or other-
    wise.
IDEM—EXTENSION TO WATER FRONT OF CITY.—All the public streets of the City
    of San Francisco running into the water, as laid down on the official map of
    the city, were, by operation of the Act of March 26th, 1851, extended and carried
    to the front line of the city, and, as such, are subject to the free enjoyment of
    the public, and exempt from executions against the city.

APPEAL from the Superior Court of the City of San
Francisco.

* This was an action of ejectment by plaintiff, pur-   [191]
chaser of Broadway Wharf, under an execution on a
judgment of *Peter Smith* v. *The City of San Francisco.* The
facts of the case, which are stated in the opinion of the
Court, were agreed upon by the parties, except the dedica-
tion of the premises as a public street. Upon this point
there was an admission by agreement of the following facts:
The map exhibited and offered in evidence was the official
map of San Francisco. Broadway was never extended as a
street beyond Front street. The city has never laid out or
sold any lots beyond the line of Front street, on Broadway.
The line on the map of the city, outside of Front street, at
the foot of Broadway, was the outside line of the city sur-
vey. The distance from the beach to the west line of Front

[1] Approved and followed in *Minor* v. *San Francisco*, 9 Cal. 45. Distinguished in
*Hart* v. *Burnett*, 15 Cal. 587, 615.

street is about 170 feet. From the west side of Front street to the water lot boundary, the distance is 412 feet; the width of the present wharf 36 feet, and length 500 feet.

The original width of Front street (as platted under the Ayuntamiento), at the foot of Broadway, was 50 varas. In the summer of 1851, the Common Council of San Francisco, by ordinance, provided that the width of Front street, from Pacific north, should be 20 varas.

On the 3d of January, 1850, and prior thereto, lots were sold by the Ayuntamiento of San Francisco, in the Bay south of Pacific street and west of Front street, as marked and numbered on the map in evidence, but none north of Pacific street and east of Front street. In 1848, a narrow wharf was built for foot passengers from the foot of Broadway easterly, extending to Front street; this was built by private individuals, with the authority of the Legislature and Council of the city, and was held by the builders, and on which tolls were received by them. The wharf was destroyed by fire in 1851. In the summer of 1850, one March, under a contract of lease from the Ayuntamiento of the city, erected a wharf extending from the foot of Broadway, westerly, beyond Front street; this was 36 feet wide. Before it was completed it was bought by the city from March. It remained in this condition until it was conveyed by the city to the Commissioners of the Sinking Fund.

[192]      * The defendants, Commissioners of the Funded Debt of the City of San Francisco, were the successors in office of the Commissioners of the Sinking Fund Debt.

The case was tried by the Court without a jury. After a judgment for the plaintiff, the defendants moved for a new trial, which was refused, and they appealed.

*Thomas, Crockett, Baker, Bates* and *Rice,* for Appellants.

Wharfages are not subject to execution. (4 Mass. 597.) The collection of tolls does not take away the character of a public easement. (21 Wend. 112.)

When the Sheriff sells land under an execution, against

the will or without the privity or consent of the defendants in execution, the latter will not be estopped, in an action of ejectment brought by the purchaser, to show that he had no such right as that which the officer attempted to sell. (4 J. J. Marsh, 585; 1 Dana, 359; 15 Mass. 470.)

This was part of the street by destination, and, as such, dedicated to public use. (2 Blackstone, 10; Schmidt, p. 43, § 178; 1 Domat, § 115, 116, 117, 308, 356 and 387; 2 Greenleaf, § 662; 3 La. An. 282; 6 Pet. 282; 6 Pet. 431, 498; 10 Pet. 663; 11 Ala. 63; *Breed* v. *Cunningham*, 2 Cal. 361; Hammond's *Nisi Prius*, 143; 20 Wend. 111; 3 Taunt. 31.) The rights of the Commissioners do not spring from any right of property, but from the privilege of charging and collecting wharfage and dockage. (*Dewitt* v. *Hays*, 2 Cal. 463.)

*N. Bennett*, for Respondent.

In ejectment by purchaser, at Sheriff's sale, defendant in execution cannot deny his own title. (Tillinghast's Adams, 301; 2 Greenleaf on Evidence, 307.)

There was no dedication of the premises as a public street. (11 Ala. 63; 2 Doug. Mich. 256; 2 Greenleaf on Evidence, § 662; 11 Barb. 457.)

Mr. Ch. J. MURRAY delivered the opinion of the Court. Mr. J. HEYDENFELDT concurred.

* This was an action to recover certain premises in    [193] the City of San Francisco, known as the Broadway Wharf and the rights appurtenant thereto, purchased by the respondent at Sheriff's sale, upon an execution against the City of San Francisco.

At the time of the rendition of the judgment, Broadway street had not been extended beyond the line of Front street by any act of the municipal authorities.

It will be observed, also, that Broadway street, or that portion of it which is embraced in this controversy, was laid out on land belonging to the State by virtue of her sover-

eignty, and which was not conveyed to the city until the Act of March 26th, 1851, which confirmed to the City of San Francisco certain beach and water property, marked on an official map of said city, referred to in said Act, on which map Broadway was laid down as a public street; and that the front line of the city was extended beyond Front street, the former termination of Broadway.

Previous to the rendition of judgment, as well as the passage of the Act referred to, the Sinking Fund Commissioners had entered into a contract with certain individuals, to construct a wharf upon Broadway street, giving to such company the right to collect wharfage and dockage for a term of years, upon the payment of a certain percentage of the proceeds, etc., which contract was confirmed by the Legislature on the 1st of May, 1851.

Let us first inquire by what authority this contract was confirmed by the Legislature. The premises or land upon which the wharf was situated or to be constructed, within the water line of the city, had passed from the State, by the Act of 26th March, 1851, and the Legislature had no authority to interfere with its disposition.

The contract of the Sinking Fund Commissioners was a nullity. The city had no right in the premises, except that acquired by virtue of the Act of March 26th, and any previous, or even subsequent attempt, to convert a public easement to private use, or to defeat the right of way over a public street of the city, was beyond the power of the corporation.

[194]        *It is contended that there was no dedication of the space between Front street and the water line of the city to public uses; and this whole argument is based upon the fact, that on the official map of the city, by which the legislative grant of beach and water lots was made, said street was not carried out to the front line of the city, while California and other parallel streets were. To my mind this raised no such presumption. Where a city is laid out with streets running to the water, such streets should be held to continue on to the high water, if the city front is afterwards filled in, or the space enlarged by accretion or

otherwise. Any other doctrine would be destructive of the interests of commercial communities.

It is said that no lots were sold by the city on the north side of said street, and, therefore, that property owners have no right to complain. It may be a sufficient answer to this to remark, that lots have been sold on both sides of the street, above the water, and that the purchasers were, doubtless, induced to buy, in consequence of the facility of ingress and egress to the front of the city.

In view of the importance of this principle, as well as its consequences, I can come to no other conclusion, than that all the public streets of the City of San Francisco, running into the water, as laid down on the official map of the city, were, by operation of the Act of March, 26th, extended and carried to the front line of the city, and as such, are subject to the free enjoyment of the public.

Again, let us inquire what the respondent purchased at the sale: "All the right, title and interest of the city to Broadway Wharf," is the language of the Sheriff's deed. If, by this, the respondent seeks to recover the land itself, he is met by the objection that it was a public street, and not subject to sale on execution; besides which, neither the levy nor deed would sustain such a claim. If it be the superstructure which is claimed, and which may properly be denominated a wharf, then the answer is, the city has no interest in it beyond the reversion, and the per cent which the Wharf Company have agreed to pay, which is a portion of the revenues of the city, and cannot *be [195] seized and sold on execution, or otherwise diverted from the purpose to which it may have been appropriated.

For these reasons, we are of opinion that the judgment of the Court below is erroneous, and should be reversed.